**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
seth@gutridesafier.com
MARIE MCCRARY (State Bar No. 262670)
marie@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN MILLAM on behalf of himself and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WALMART INC.,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Darren Millam ("Plaintiff"), by and through his counsel, brings this Class Action Complaint ("Complaint") against Defendant Walmart Inc. ("Defendant"). The following allegations are based upon information and belief, including the investigation of Plaintiff's counsel, unless stated otherwise.

## INTRODUCTION

1.      This Complaint seeks to remedy Defendant's unlawful, unfair, and deceptive business practices with respect to the advertising, marketing, and sale of Great Value brand Recycling Drawstring Bags (the "Products").

2.      Plastic waste is an increasingly dire international problem. Nearly 90% of plastic waste is not recycled. Much of the unrecycled plastic waste ends up in the ocean. Indeed, over 12 million tons of plastic enters the ocean each year.[1] As consumers have become increasingly aware of the problems associated with pollution and plastic waste, many consumers actively seek to purchase products that are either compostable or recyclable to divert such waste from waterways, oceans, their communities, landfills, and incinerators.

3.      Seeking to take advantage of consumers' demands for such products, Defendant markets Great Value brand trash bags as "Recycling" bags. Next to the "Recycling" claim, Defendant includes a large recycling symbol and the claim "MUNICIPAL PROGRAMS." Defendant's website includes additional claims such as "designed to handle everyday recycling loads around the house" and "easy sorting for municipal recycling programs." Reasonable consumers understand this to mean that the Products are suitable for disposing of recyclable waste and are recyclable. In truth, the bags contaminate the recyclable waste stream, decrease the recyclability of otherwise recyclable materials, and are not themselves recyclable because they are made from low-density polyethylene plastic ("LDPE" or "No. 4 plastic").

4.      In the United States municipal recycling facilities ("MRFs") collect recyclable waste, often through curbside pickup. The recyclable waste is sorted and sold to facilities that

---

[1] Nick Young, *How does plastic end up the ocean?*, https://www.greenpeace.org/new-zealand/story/how-does-plastic-end-up-in-the-ocean/ (last accessed June 1, 2022).

can process the material into clean flake material that can be sold and used to make new plastic items. However, it is not cost effective to process LDPE plastic domestically. And, over the past few years, due to foreign export restrictions, the foreign market for LDPE plastic has all but been eliminated. As a result, products made of LDPE plastic end up incinerated, in landfills or in the environment. What is more, most MRFs classify products made of LDPE film as a recycling contaminant because they can clog up recycling equipment and reduce the value of recyclable items, including otherwise recyclable plastics. Indeed, "[w]hen bagged items come through the sort line, [MRFs] throw it in the trash."[2] As a result, the Products are not only non-recyclable but they are unsuitable for disposing of recyclable items.

5.      Defendant knows that the Products typically end up in landfills or are incinerated and are a contaminant unsuitable for recycling. Defendant's representations that the Products are "Recycling" bags are material, false, misleading and likely to deceive members of the public.

6.      This action seeks an injunction precluding the sale of the Products within a reasonable time after entry of judgment, unless the Products' packaging and marketing are modified to remove the "Recycling" misrepresentation and the recycling symbol from the front label of the Products and to disclose the omitted facts about their true recyclability. Plaintiff further seeks an award of damages and/or restitution to compensate him and those similarly situated for Defendant's acts of unfair competition and false and misleading advertising.

**PARTIES**

7.      Plaintiff is a citizen of California, and was at all relevant times, a resident of Indio, California. Plaintiff's permanent home is in Indio, California, and he intends to continue residing in Indio, California for the foreseeable future.

8.      Defendant Walmart Inc. is a publicly traded corporation organized and existing

---

[2] Angela Hill, *Bay Area recycling tips: Can I recycle that or not?*, The Mercury News, https://www.mercurynews.com/2016/03/08/bay-area-recycling-tips-can-i-recycle-that-or-not/ (last visited June 1, 2022).

under the laws of the state of Delaware, having its principal place of business in Bentonville, Arkansas. The Great Value trademark is wholly owned by Defendant.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. Section 1332(d)(2)(A) because: (i) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (ii) Plaintiff and Defendant are citizens of different states.

10.     This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

11.     The injuries, damages and/or harm upon which this action is based occurred or arose out of activities engaged in by Defendant within, affecting, and emanating from the State of California. Defendant regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derive substantial revenue from products provided to persons in the state of California. Defendant has engaged, and continues to engage, in substantial and continuous business practices in the state of California.

12.     Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the State of California, including within this District.

13.     In accordance with California Civil Code Section 1780(d), Plaintiff concurrently files herewith a declaration establishing that he purchased the Products in Indio, California. (*See* Exhibit A.)

14.     Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

## SUBSTANTIVE ALLEGATIONS

### (1) Defendant's False Representations Regarding the Products Suitability for Recycling and Recyclability.

15.     Defendant manufactures, markets, and sells Great Value Recycling Drawstring Bags in both the 13 gallon and 30 gallon sizes. The Products are also offered in both transparent blue and clear. The Products are made of low-density polyethylene or No. 4 plastic.



1   ion "Recycling" on the front label of

2   e left of the "Recycling" claim,

3   under the representation, Defendant

4   te. Defendant also include the

5   GRAMS," and "RECYCLABLES" in

6   of the Product package for 13-gallon

7   on the other varieties of the Products

8

9

10

11

12



13

14

15

16

17

18

19

20

21

22

23

24

25

26

27        17.      On the back of the Product package, Defendant includes another image of the

28   Product filled with recyclable waste and the universal recycling symbol. Defendant also repeats

the "EASY SORTING," "MUNICIPAL PROGRAMS," and "RECYCLABLES" claims in green circles on the back of the package. A photo of the back of the Product package is shown below:



18.     Defendant's website provides additional misrepresentations about the suitability of the Products for recycling. For example, Defendant states that Products "are designed to handle everyday recycling loads around the house or in the workplace" and "[t]hese blue bags are for easy sorting for municipal programs, and the drawstring closure keeps makes the easy to

lift, carry, and toss away." The website further states that the bags are "[p]erfect for municipal recycling programs." A screenshot of Defendant's website description of the Product is shown below:

**Product details** ∧

Take charge of daily household demands with Great Value Recycling Drawstring Bags. These recycling bags have a 13-gallon capacity and are designed to handle everyday recycling loads around the house or in the workplace. These blue bags are made for easy sorting for municipal recycling programs, and the drawstring closure keeps makes the easy to lift, carry, and toss away. Each box comes with 20 bags, making for long-lasting recycling control solutions. Check out other Great Value products for all of your cleaning and organizing needs. Take control of garbage with Great Value Recycling Drawstring Bags.

**Great Value Recycling Drawstring Bags, Blue, 13 Gallon, 20 Count**

- Drawstring closure
- Blue recycling bags
- Perfect for municipal recycling programs
- Easy sorting

ⓘ **We aim to show you accurate product information.** Manufacturers, suppliers and others provide what you see here, and we have not verified it. See our disclaimer

https://www.walmart.com/ip/Great-Value-Blue-Recycling-Tall-Kitchen-Trash-Bags-13-Gallon-20-Bags-Drawstring/

### **(2) LDPE Bags Are Not Recyclable and Instead Are a Harmful Contaminant.**

19.     Recycling is "the process of collecting, sorting, cleansing, treating, and reconstituting materials that would otherwise become solid waste, and returning them to the economic mainstream in the form of raw material for new, reused, or reconstituted products which meet the quality standards necessary to be used in the marketplace." Cal. Pub. Res. Code § 40180. Thus, "recyclable" products must, if discarded into a recycling bin, be: (i) accepted for collection by a recycling facility; and (ii) processed for reuse or use in manufacturing another item.

20.     In the United States, after plastics are discarded into a recycling bin, they are sent to a MRF where the plastics are sorted by resin type. Plastics numbered #3-7 are batched together to form mixed bales which require further processing. However, "the economics [of

CLASS ACTION COMPLAINT

processing those bales] have proven insurmountable."[3] Prior to 2018, MRFs in the United States exported #3-7 mixed bails, primarily, to China. However, on January 1, 2018, China enacted the National Sword policy which limits plastic waste imports. There is, however, minimal demand, value, and processing capacity for them in the United States. Thus, mixed plastic #3-7 bales, which were "previously exported to China, now have negligible to negative value across the country and 'cannot be effectively or efficiently recycled in the US.'"[4] As a result, the majority of LDPE or No. 4 plastic sent to recycling facilities is incinerated, which releases large quantities of greenhouse gases and toxic air emissions.

21.     Not only are LDPE plastics, such as the Products, unrecyclable, but in many cases they contaminate the waste stream and decrease the recyclability of otherwise recyclable items. Contaminants are any plastic materials that MRFs do not accept or decrease the recyclability of other items. Because the Products are made of LDPE film they are especially problematic. Plastic films risk clogging and breaking down machinery used to sort recyclable products. As a result, many MRFs do not accept plastic bags at all.

22.     A high presence of contamination, including unrecyclable films such as LDPE, in the recycling stream, makes otherwise recyclable plastic materials unrecyclable because purchasers of recyclable materials value bales of plastic by the percentage of unrecyclable contaminant present in the bales. If contamination exceeds a certain level, the bale must be incinerated or sent to a landfill. Therefore, not only is LDPE not recyclable, it may also prevent recycling of otherwise recyclable materials.

23.     Accordingly, Defendant's use of LDPE plastic means its Products are not recyclable and the label claims regarding recyclability, including the Products' use of the recycling symbol, are therefore false.

_____

[3] *Circular Claims Fall Flat,* Greenpeace, at 10, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf (last visited June, 1 2022).

[4] *Id.* at 11.

24.     Defendant further represents and misleads consumers into believing that the Products are useful and beneficial for recycling purposes, including as containers for recyclable materials during collection, transport and sorting. But the use of the Products as containers for recyclables is both unnecessary and counterproductive.

25.     As a general rule, recyclables should be clean and dry and should be placed directly in a collection bin. Because the Products are made of LDPE film, and for the other reasons discussed above, the Products are not beneficial to either the collection or transport processes, which are not currently designed to work with such bags. Even worse, the Products add work, expense, and waste to the sorting and recycling processes at recycling facilities, as they must be separated from recyclable materials and then disposed of. Most MRFs do not bother with this process due to the hazard of opening plastic bags that may contain "broken glass, syringes" and simply throw bagged recyclables directly into trash.[5] Use of the Products thereby decreases the efficiency of, and increases the cost of, recycling programs, and ultimately adds to the problems of plastic accumulation and plastic contamination in the environment (problems that recycling programs are intended to ameliorate). In sum, the Products are not suitable for recycling and are actually harmful, not beneficial to the overall recycling process.

26.     At a minimum, Defendant's marketing of the Products as suitable and beneficial for recycling purposes is an unfair practice under the UCL, as it undermines both state and local policies of reducing the amount of plastic in landfills and the amount of pollution from plastic in the environment. The manufacture and use of unnecessary LDPE plastic bags—which cannot be recycled and that complicate and contaminate the collection and recycling of truly recyclable materials—undermines the public policies that recycling programs, and consumers who recycle, seek to achieve.

---

[5] *See*, *e.g.*, Angela Hill, *Bay Area recycling tips: Can I recycle that or not?*, The Mercury News, https://www.mercurynews.com/2016/03/08/bay-area-recycling-tips-can-i-recycle-that-or-not/ (last visited June 1, 2022).

**(3) Defendant's Marketing of the Products Violates California Public Policy and the Federal Trade Commission Green Guides.**

27.     The State of California has declared that "it is the public policy of the state that environmental marketing claims, whether explicit or implied, should be substantiated by competent and reliable evidence to prevent deceiving or misleading consumers about the environmental impact of plastic products." Cal. Pub. Res. Code § 42355.5. The policy is based on the Legislature's finding that "littered plastic products have caused and continue to cause significant environmental harm and have burdened local governments with significant environmental cleanup costs." *Id.* § 42355.

28.     Additionally, California Business and Professions Code § 17580.5 makes it "unlawful for any person to make any untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied." Pursuant to that section, the term "environmental marketing claim" includes any claim contained in the Guides for Use of Environmental Marketing Claims published by the Federal Trade Commission (the "Green Guides"). Cal. Bus. & Prof. Code § 17580.5; *see also* 16 C.F.R. § 260.1, *et seq.* As detailed below, Defendant's marketing of the Products as "Recycling" bags violates several provisions of the FTC's Green Guides.

29.     First, Defendant's marketing of the Products as "Recycling" bags violates the Green Guides provisions prohibiting the labeling of products as recyclable unless the products can actually be converted into reusable material. Section 260.12(a) of the Green Guides provides that it is "deceptive to misrepresent, directly or ***by implication***, that a product or package is recyclable. A product or package should not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item." (Emphasis added.) Defendant's use of the words "Recycling" bags with the universal recycling symbol communicates that the Products are recyclable. The Green Guides further explain that "[m]arketers should ***clearly and prominently*** qualify recyclable claims to the extent necessary to avoid deception about the availability of recycling programs and collection sites to

consumers." 16 C.F.R. § 260.12(b) (emphasis added). And in promulgating the current recycling definition, the FTC clarified that "[f]or a product to be called recyclable, there must be an established recycling program, municipal or private, through which the product will be converted into, or used in, another product or package." *See* 63 Fed. Reg. 84, 11 24247 (May 1, 1998). As the FTC has stated, "while a product may be technically recyclable, if a program is not available allowing consumers to recycle the product, there is no real value to consumers." *Id.*, at 24243.

30.     Here, Defendant states that the Product is for "MUNICIPAL PROGRAMS" next to a picture of a recycling truck. However, this is not a disclaimer and, in fact, only serves to mislead consumers. Reasonable consumers understand this statement to mean that the Product is designed for recycling wherever municipal recycling is available, which is false. Therefore, the representation is neither a clear nor prominent disclaimer as required by the Green Guides.

31.     This starkly contrasts with Defendant's competitors who provide a prominent front-of-the-label disclaimer that their products can only be used in "MUNICIPAL BLUE BAG PROGRAMS WHERE APPLICABLE," not anywhere that municipal recycling programs are available:



32.     Defendant's competitors disclose that their products are specifically designed for "Blue Bag" programs. Although these programs were once numerous throughout the country,

the expense and inefficacy of these programs have caused them to be all but be abandoned. For example, in California, 99.9% of communities do not currently have a "Blue Bag" program. In the small number of remote communities where "Blue Bag" programs still remain, the programs typically provide bags directly to consumers for free. Defendant knows this fact, is aware that its competitors have correctly and prominently disclosed that their bags are only usable for "Blue Bag Programs Where Applicable," but it continues to mislead consumers into believing that they can and should use the Products for ordinary curbside recycling.

33.     Further, Defendant's marketing of the Products as "Recycling" bags violates these provisions of the Green Guides because Defendant falsely implies that the Products are suitable for recycling and are recyclable even though the Products cannot be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item. Although the Products may be accepted for recycling by some curbside programs, LDPE waste is ultimately incinerated or sent to landfills.

34.     Further, the Green Guides require marketers to support their environmental claim with a reasonable basis before they make the claims. 16 CFR § 260.2 ("Marketers must ensure that all reasonable interpretations of their claims are truthful, not misleading, and supported by a reasonable basis before they make the claims."). "[A] firm's failure to possess and rely upon a reasonable basis for objective claims constitutes an unfair and deceptive act or practice in violation of Section 5 of the Federal Trade Commission Act." *See* FTC Policy Statement Regarding Advertising Substantiation, 104 FTC 839 (1984) (cited by 16 CFR § 260.2). Defendant does not possess information sufficient to support its claims that the Products are "Recycling" bags.

### (4) Defendant Misleadingly Market the Products to Increase Profits and Gain a Competitive Edge.

35.     Defendant markets the Products as "Recycling" bags to capitalize on consumer demand for "green" products. In particular, Defendant intends for reasonable consumers to believe, and reasonable consumers do believe, that the Products are suitable for disposing of

recyclable items and do not contaminate the recycling waste stream. Further, Defendant intends for consumers to believe, and reasonable consumers do believe, that because the Products are "Recycling" bags and because the Product package includes the universal recycling symbol, the Products are recyclable. Finally, Defendant intends for consumers to believe, and reasonable consumers do believe, that because the Products are "Recycling" bags, they are specially designed to be environmentally superior to competitors' products that do not contain the same representation.

36. Defendant's illegal marketing campaign has been extremely successful. Defendant is among the largest sellers of trash bags nationally. The Products are sold in Defendant's stores throughout California and the country. Because of the big potential for sales, Defendant has no incentive to stop claiming that the Products are "Recycling" bags or change its disclaimers to discourage sales.

37. Because consumers are led to believe the Products are "Recycling" bags and, therefore, purchase them because they are a "green" product, Defendant is able to charge a premium for the Products. If consumers knew that the Products were not suitable for recycling, contaminated the recyclable waste stream, and were not recyclable, the Products would not command a premium price based on that representation, fewer consumers would purchase them, and consumers would not pay the premium attributable to that representation.

**(5) Plaintiff's Experience**

38. On or around October 15, 2021, Plaintiff purchased a 20-count box of 13-gallon Great Value Recycling Drawstring Bags for approximately $3.58 from the Walmart Supercenter in Indio, California. He read the claim "Recycling" and "MUNICIPAL PROGRAMS" next to a large recycling symbol on the Products' front label and purchased the Products because he believed that they were suitable for disposing of recyclable waste and were themselves recyclable. After purchasing and using the Products, Plaintiff learned that they are a banned contaminant and unacceptable for use for recycling in his community and stopped using them. Had Plaintiff known that the Products were not suitable for recycling and not recyclable, he would not have purchased them, or at a minimum, he would not have paid a premium for them.

39.     Plaintiff continues to desire to purchase trash bags from Defendant that are suitable for recycling and are recyclable because it is his belief that such a product would be cleaner and more convenient than directly disposing of his recyclable waste into his curbside recycling bin. However, Plaintiff is unable to determine at the point of purchase if the Products are made from recyclable materials and compatible with municipal recycling programs. Plaintiff understands that the design and composition of the Products may change over time. But as long as Defendant may use the phrase "Recycling" bags to describe products that are unsuitable for recycling and are not recyclable, then when presented with Defendant's packaging, Plaintiff continues to have no way of determining whether the representation "Recycling" bags is in fact true. Thus, Plaintiff is likely to be repeatedly presented with false or misleading information when shopping and he will be unable to make informed decisions about whether to purchase Defendant's Products and will be unable to evaluate the different prices between Defendant's Products and competitors' products. Plaintiff is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that its trash bags marketed as "Recycling" bags are suitable for recycling and are recyclable.

## CLASS ALLEGATIONS

40.     In addition to his individual claims, Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

41.     Plaintiff brings this class action lawsuit on behalf of a proposed Class of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, defined as follows:

> All persons who, between July 1, 2018 and the present, purchased Great Value brand Recycling Drawstring Bags in California.

> Excluded from this Class is Defendant, its parents, subsidiaries, affiliates, officers and directors, and those who purchased Great Value brand Recycling Drawstring Bags for the purpose of resale.

42.     This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

43.     Numerosity: Plaintiff does not know the exact size of the Class, but he estimates that it is composed of more than 5,000 persons. The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

44.     Common Questions Predominate: This action involves common questions of law and fact to the potential Class because each Class Member's claim derives from the same deceptive, unlawful and/or unfair statements and omissions. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each Class Member to recover. The questions of law and fact common to the Class include, but are not limited to, the following:

a)      Whether the Products are "Recycling" bags suitable for disposing of recyclable waste;

b)      Whether the Products are recyclable;

c)      Whether Defendant unfairly, unlawfully and/or deceptively failed to inform Class Members that the Products are made from materials (i.e., LDPE aka No. 4 plastic) that are not recyclable;

d)      Whether Defendant's advertising and marketing regarding the Products sold to Class Members was likely to deceive Class Members or was unfair;

e)      Whether Defendant engaged in the alleged conduct knowingly, recklessly, or negligently;

f)      The amount of the premium lost by Class Members as a result of such wrongdoing;

g)      Whether Class Members are entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and

h)      Whether Class Members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

45.     Typicality: Plaintiff's claims are typical of the claims of other members of the Class because, among other things, all such claims arise out of the same wrongful course of conduct in which the Defendant engaged in violation of law as described herein. Plaintiff and Class Members purchased one or more boxes of Products. In addition, Defendant's conduct that gave rise to the claims of Plaintiff and Class Members (i.e., marketing, sales and advertising of the Products as suitable for recycling and/or recyclable) is the same for Plaintiff and all members of the Class. Plaintiff's claims, like the claims of the Class, arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

46.     Adequacy of Representation: Plaintiff will fairly and adequately protect the interests of all Class Members because it is in his best interests to prosecute the claims alleged herein to obtain full compensation due to him for the unfair and illegal conduct of which he complains. Plaintiff also has no interests that are in conflict with, or antagonistic to, the interests of Class Members. Plaintiff has retained highly competent and experienced class action attorneys to represent his interests and those of the Class. By prevailing on his own claims, Plaintiff will establish Defendant's liability to all Class Members. Plaintiff and his counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class Members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class Members.

47.     Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual Class Member may be relatively small, the expenses and burden of individual litigation would make it difficult or

1    impossible for individual Class Members to redress the wrongs done to them, while an

2    important public interest will be served by addressing the matter as a class action.

3        48.    Plaintiff is unaware of any difficulties that are likely to be encountered in the

4    management of this action that would preclude its maintenance as a class action.

5                                    **CAUSES OF ACTION**

6        49.    Plaintiff does not plead, and hereby disclaims, any causes of action under any

7    regulations promulgated by the FTC. Plaintiff relies on these regulations only to the extent such

8    regulations have been separately enacted as state law or regulations or provide a predicate basis

9    of liability under the state and common laws cited in the following causes of action.

10                          **PLAINTIFF'S FIRST CAUSE OF ACTION**

11        **(Violation of the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*)**

12                              **On Behalf of Himself and the Class**

13        50.    Plaintiff realleges and incorporates the paragraphs of this Complaint as if set

14    forth herein.

15        51.    This cause of action is brought pursuant to the California Consumers Legal

16    Remedies Act, California Civil Code § 1750, *et seq*. ("CLRA").

17        52.    Defendant's actions, representations and conduct have violated, and continue to

18    violate the CLRA, because they extend to transactions that are intended to result, or which have

19    resulted, in the sale or lease of goods or services to consumers.

20        53.    Plaintiff and other Class Members are "consumers" as that term is defined by the

21    CLRA in California Civil Code § 1761(d).

22        54.    The Products that Plaintiff (and others similarly situated Class Members)

23    purchased from Defendant were and are "goods" within the meaning of California Civil Code §

24    1761(a).

25        55.    By engaging in the actions, representations and conduct set forth in this

26    Complaint, Defendant has violated, and continue to violate, § 1770(a)(2), § 1770(a)(5),

27    § 1770(a)(7), § 1770(a)(8), and § 1770(a)(9) of the CLRA. In violation of California Civil Code

28    § 1770(a)(2), Defendant's acts and practices constitute improper representations regarding the

source, sponsorship, approval, or certification of the goods it sold. In violation of California Civil Code § 1770(a)(5), Defendant's acts and practices constitute improper representations that the goods it sells have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have. In violation of California Civil Code § 1770(a)(7), Defendant's acts and practices constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code § 1770(a)(8), Defendant has disparaged the goods, services, or business of another by false or misleading representation of fact. In violation of California Civil Code § 1770(a)(9), Defendant has advertised goods or services with intent not to sell them as advertised. Specifically, in violation of §§ 1770(a)(2), (a)(5), (a)(7), and (a)(9), Defendant's acts and practices led customers to falsely believe that the Products are (1) suitable for disposing of recyclable waste and (2) that they are recyclable, when they are not. In violation of Section 1770(a)(8), Defendant falsely or deceptively market and advertise that, unlike products not specifically denominated as "Recycling" bags, the Products are suitable for recycling and are recyclable.

56.     Plaintiff requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the future, Plaintiff and the other members of the Class will continue to suffer harm.

57.     CLRA § 1782 NOTICE. On or around February 28, 2022, Plaintiff provided Defendant with notice and demand that within thirty (30) days from that date, Defendant correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. (*See* Exhibit B.) Defendant failed to respond to Plaintiff's letter or to take any of the requested actions within thirty days. Plaintiff seeks, pursuant to California Civil Code § 1780(a), on behalf of himself and those similarly situated, actual damages, punitive damages and restitution of any ill-gotten gains due to Defendant's acts and practices. With regard to the amount of damages and restitution, Plaintiff seeks to recover for himself and the Class a full refund of the price paid for the Products, or in the alternative, the price premium paid for the

Products, i.e., difference between the price consumers paid for the Products and the price that they would have paid but for Defendant's misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.

58.     Plaintiff also requests that this Court award him costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

**PLAINTIFF'S SECOND CAUSE OF ACTION**

**(False Advertising, Business and Professions Code § 17500, *et seq.* ("FAL"))**

**On Behalf of Himself and the Class**

59.     Plaintiff realleges and incorporates by reference the paragraphs of this Complaint as if set forth herein.

60.     Beginning at an exact date unknown to Plaintiff, but within three (3) years preceding the filing of the Complaint, Defendant made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Products.

61.     Defendant made representations and statements (by omission and commission) that led reasonable customers to believe the Products are (1) suitable for disposing of recyclable waste and (2) that they are recyclable when they are not. Defendant deceptively failed to inform Plaintiff, and those similarly situated, that the Products contaminate the recycling waste stream, decrease the recyclability of their otherwise recyclable items, and are not recyclable.

62.     Plaintiff and those similarly situated relied to their detriment on Defendant's false, misleading and deceptive advertising and marketing practices, including each of the misrepresentations and omissions set forth above. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, refraining from purchasing the Products or paying less for them.

63.     Defendant's acts and omissions are likely to deceive reasonable consumers and the general public.

64.     Defendant engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits. Accordingly, Defendant has engaged in false

advertising, as defined and prohibited by Section 17500, *et seq.* of the California Business and Professions Code.

65.     The aforementioned practices, which Defendant has used, and continues to use, to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

66.     As a direct and proximate result of such actions, Plaintiff and the other members of the Class have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In particular, Plaintiff, and those similarly situated, paid a price premium for the Products, i.e., the difference between the price consumers paid for the Products and the price that they would have paid but for Defendant's misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis. Alternatively, Plaintiff and those similarly situated will seek a full refund of the price paid upon proof that the sale of the Products was unlawful.

67.     Plaintiff seeks equitable relief, including restitution, with respect to his FAL claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in the other causes of action, in the event that such causes of action will not succeed. Plaintiff and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under the other causes of action and will lack an adequate remedy at law, if the Court requires him to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the FAL, because Plaintiff may not be able to establish each Class Member's individualized understanding of Defendant's misleading representations, but the FAL does not require individualized proof of deception or injury by absent class members. *See, e.g., Ries v. Ariz. Bevs. USA LLC,* 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("restitutionary relief under the UCL and FAL 'is available without individualized proof of deception, reliance, and injury.'"). In addition, Plaintiff and the Class may be unable to obtain such relief under the

1  other causes of action and will lack an adequate remedy at law, if Plaintiff is unable to

2  demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the FAL

3  imposes no such *mens rea* requirement and liability exists even if Defendant acted in good faith.

4      68.    Plaintiff seeks, on behalf of those similarly situated, a declaration that the above-

5  described practices constitute false, misleading and deceptive advertising.

6      69.    Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit the

7  sale of the Products within a reasonable time after entry of judgment, unless packaging and

8  marketing is modified to disclose the omitted facts about the recyclability of the Products. Such

9  misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will

10  continue to cause injury in fact to the general public and the loss of money and property in that

11  the Defendant will continue to violate the laws of California, unless specifically ordered to

12  comply with the same. This expectation of future violations will require current and future

13  consumers to repeatedly and continuously seek legal redress in order to recover monies paid to

14  Defendant to which Defendant is not entitled. Plaintiff, those similarly situated and/or other

15  consumers nationwide have no other adequate remedy at law to ensure future compliance with

16  the California Business and Professions Code alleged to have been violated herein.

17  **PLAINTIFF'S THIRD CAUSE OF ACTION**

18  **(Fraud, Deceit and/or Misrepresentation)**

19  **On Behalf of Himself and the Class**

20      70.    Plaintiff realleges and incorporates by reference the paragraphs of this Complaint

21  as if set forth herein.

22      71.    Defendant fraudulently and deceptively led Plaintiff to believe that the Products

23  are "Recycling" bags when the bags are not suitable for disposing of recyclable waste and are

24  not recyclable. Defendant deceptively failed to inform Plaintiff, and those similarly situated,

25  that the Products contaminate the recycling waste stream, decrease the recyclability of their

26  otherwise recyclable items, and are not recyclable.

27      72.    These misrepresentations and omissions were material at the time they were

28  made. They concerned material facts that were essential to the analysis undertaken by Plaintiff

1    as to whether to purchase the Products.

2         73.    Defendant made identical misrepresentations and omissions to members of the

3    Class regarding the Products.

4         74.    Plaintiff and those similarly situated relied to their detriment on Defendant's

5    fraudulent misrepresentations and omissions. Had Plaintiff and those similarly situated been

6    adequately informed and not intentionally deceived by Defendant, they would have acted

7    differently by, without limitation, not purchasing (or paying less for) the Products.

8         75.    Defendant had a duty to inform Class Members at the time of their purchases that

9    the Products were not suitable for disposing of recyclable waste and are made from materials

10   that are not recyclable. Defendant omitted to provide this information to Class Members. Class

11   Members relied to their detriment on Defendant's omissions. These omissions were material to

12   the decisions of the Class Members to purchase the Products. In making these omissions,

13   Defendant breached its duty to Class Members. Defendant also gained financially from, and as a

14   result of, its breach.

15        76.    By and through such fraud, deceit, misrepresentations and/or omissions,

16   Defendant intended to induce Plaintiff, and those similarly situated, to alter their position to

17   their detriment. Specifically, Defendant fraudulently and deceptively induced Plaintiff, and

18   those similarly situated, to, without limitation, pay a premium to purchase the Products.

19        77.    As a direct and proximate result of Defendant's misrepresentations and

20   omissions, Plaintiff, and those similarly situated, have suffered damages. In particular, Plaintiff

21   seeks to recover on behalf of himself and those similarly situated the price premium paid for the

22   Products, i.e., the difference between the price consumers paid for the Products and the price

23   that they would have paid but for Defendant's misrepresentation. This premium can be

24   determined by using econometric or statistical techniques such as hedonic regression or conjoint

25   analysis.

26        78.    Defendant's conduct as described herein was willful and malicious and was

27   designed to maximize Defendant's profits even though Defendant knew that it would cause loss

28   and harm to Plaintiff and those similarly situated.

## PLAINTIFF'S FOURTH CAUSE OF ACTION

### (Negligent Misrepresentation)

### On Behalf of Himself and the Class

79.     Plaintiff realleges and incorporates by reference the paragraphs of this Complaint as if set forth herein.

80.     Defendant provided false and misleading information regarding the Products, representing that the bags are "Recycling" bags and marketing the Products with the universal recycling symbol when the Products are not suitable for recycling waste and are not recyclable. Defendant deceptively failed to inform Plaintiff, and those similarly situated, that the Products contaminate the recycling waste stream, decrease the recyclability of their otherwise recyclable items, and are not recyclable.

81.     These representations were material at the time they were made. They concerned material facts that were essential to the analysis undertaken by Plaintiff as to whether to purchase the Products.

82.     Defendant made identical misrepresentations and omissions to members of the Class regarding the Products.

83.     Defendant should have known its representations to be false and had no reasonable grounds for believing them to be true when they were made.

84.     By and through such negligent misrepresentations, Defendant intended to induce Plaintiff and those similarly situated to alter their position to their detriment. Specifically, Defendant negligently induced Plaintiff, and those similarly situated to, without limitation, to purchase the Products.

85.     Plaintiff and those similarly situated relied to their detriment on Defendant's negligent misrepresentations. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, not purchasing (or paying less for) the Products.

86.     Plaintiff and those similarly situated have suffered damages. In particular, Plaintiff seeks to recover on behalf of himself and those similarly situated the price premium

paid for the Products, i.e., the difference between the price consumers paid for the Products and the price that they would have paid but for Defendant's misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.

## PLAINTIFF'S FIFTH CAUSE OF ACTION

### (Unfair, Unlawful and Deceptive Trade Practices,

### Business and Professions Code § 17200, *et seq.*)

### On Behalf of Himself and the Class

87. Plaintiff realleges and incorporates by reference the paragraphs of this Complaint as if set forth herein.

88. Within four (4) years preceding the filing of this Complaint, and at all times mentioned herein, Defendant has engaged, and continue to engage, in unfair, unlawful and deceptive trade practices in California by engaging in the conduct outlined in this Complaint.

89. Defendant has engaged, and continue to engage, in unfair practices as described herein, in violation of the Unfair Competition Law, California Business & Professions Code §§ 17200 *et seq.* (the "UCL"), by, without limitation:

   a. deceptively representing to Plaintiff, and those similarly situated, the Products are "Recycling" bags;

   b. marketing the Products using the universal recycling symbol;

   c. failing to inform Plaintiff, and those similarly situated, that the Products are not suitable for disposing of recyclable waste because they are a contaminant and decrease the recyclability of otherwise recyclable items;

   d. failing to inform Plaintiff, and those similarly situated, that the Products are made with materials that are not recyclable;

   e. contravening and undermining state policies expressed in California Public Resource Code § 42355 ( "[u]se of the term 'degradable,' 'biodegradable,' 'decomposable,' or other like terms on plastic products is inherently misleading unless the claim includes a thorough disclaimer providing necessary qualifying

1    details, including, but not limited to, the environments and timeframes in which

2    the claimed action will take place") and § 42355.5 (it is "the public policy of

3    [California] that environmental marketing claims, whether explicit or implied,

4    should be substantiated by competent and reliable evidence to prevent deceiving

5    or misleading consumers about the environmental impact of plastic products");

6    and

7    f.    contravening and undermining state and local policies in favor or recycling,

8          recycling programs, and reducing the amount of plastic in landfills and the

9          amount of pollution from plastic in the environment.

10   90.   Defendant has engaged, and continue to engage, in unlawful practices as

11   described herein, in violation of the UCL, by, without limitation, violating the following laws:

12   a.    the Federal Trade Commission Green Guides regulations, including, without

13         limitation, 16 C.F.R. §§ 260.2, 260.12(a), and 260.12(b) as described herein;

14   b.    the Environmental Marketing Claims Act, including, without limitation, Cal. Bus.

15         & Prof. Code § 17580(a) (Defendant has not maintained in written form in its

16         records information and documentation supporting the validity of its

17         representation) and § 17580.5(a) (Defendant's representations and omissions

18         complained of herein constitute untruthful, deceptive, or misleading

19         environmental marketing claims) as described herein;

20   c.    the CLRA as described herein; and

21   d.    the FAL as described herein.

22   91.   Defendant has engaged, and continue to engage, in fraudulent practices as

23   described herein, in violation of the UCL, by, without limitation:

24   a.    deceptively representing to Plaintiff, and those similarly situated, the Products

25         are "Recycling" bags;

26   b.    marketing the Products using the universal recycling symbol;

27   c.    failing to inform Plaintiff, and those similarly situated, that the Products are not

28         suitable for disposing of recyclable waste because they are a contaminant and

- 25 -

CLASS ACTION COMPLAINT

decrease the recyclability of otherwise recyclable items; and

d.  failing to inform Plaintiff, and those similarly situated, that the Products are made with materials that are not recyclable.

92.     Plaintiff and those similarly situated relied to their detriment on Defendant's unfair, deceptive and unlawful business practices. Had Plaintiff and those similarly situated been adequately informed and not deceived by Defendant, they would have acted differently by not purchasing (or paying less for) the Products.

93.     Defendant's acts and omissions are likely to deceive reasonable consumers and the general public.

94.     Defendant engaged in these unfair practices to increase its profits. Accordingly, Defendant has engaged in unlawful trade practices, as defined and prohibited by Section 17200, *et seq.* of the California Business and Professions Code.

95.     The aforementioned practices, which Defendant has used to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

96.     As a direct and proximate result of such actions, Plaintiff and the other members of the Class have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In particular, Plaintiff and those similarly situated paid a price premium for the Products, i.e., the difference between the price consumers paid for the Products and the price that they would have paid but for Defendant's misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis. Alternatively, Plaintiff and those similarly situated will seek a full refund of the price paid upon proof that the sale of the Products was unlawful.

97.     Plaintiff seeks, on behalf of those similarly situated, equitable relief, including restitution for the premium and/or the full price that he and others paid to Defendant as result of Defendant's conduct. Plaintiff and the Class lack an adequate remedy at law to obtain such

relief with respect to his "unfairness" claims in this UCL cause of action, because there is no cause of action at law for "unfair" conduct. Plaintiff and the Class similarly lack an adequate remedy at law to obtain such relief with respect to his "unlawfulness" claims in this UCL cause of action because the FTC Green Guides and Environmental Claims Marketing Act do not provide a direct cause of action, so Plaintiff and the Class must allege those violations as predicate acts under the UCL to obtain relief.

98.    Plaintiff also seeks equitable relief, including restitution, with respect to his UCL unlawfulness claims for violations of the CLRA, FAL and his UCL deceptiveness claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in the other causes of action, in the event that such causes of action will not succeed. Plaintiff and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under the other causes of action and will lack an adequate remedy of law, if the Court requires him to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the UCL, because Plaintiff may not be able to establish each Class Member's individualized understanding of Defendant's misleading representations, but the UCL does not require individualized proof of deception or injury by absent class members. *See, e.g., Stearns v Ticketmaster,* 655 F.3d 1013, 1020, 1023-25 (distinguishing, for purposes of CLRA claim, among class members for whom website representations may have been materially deficient, but requiring certification of UCL claim for entire class). In addition, Plaintiff and the Class may be unable to obtain such relief under the other causs of action and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the UCL imposes no such *mens rea* requirement and liability exists even if Defendant acted in good faith.

99.    Plaintiff seeks, on behalf of those similarly situated, a declaration that the above-described trade practices are fraudulent and/or unlawful.

100.    Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit the sale of the Products within a reasonable time after entry of judgment, unless packaging and

marketing is modified to remove the implication that the Products are recyclable and disclose the omitted facts about the recyclability of the Products. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which Defendant is not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and those similarly situated, respectfully request that the Court enter judgement against Defendant as follows:

A.   Certification of the proposed Class, including appointment of Plaintiff's counsel as Class Counsel;

B.   An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.   An award of compensatory damages in an amount to be determined at trial;

D.   An award of statutory damages in an amount to be determined at trial;

E.   An award of punitive damages in an amount to be determined at trial;

F.   An award of treble damages;

G.   An award of restitution in an amount to be determined at trial;

H.   An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

I.   For reasonable attorney's fees and the costs of suit incurred; and

J.   For such further relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: July 1, 2022                          **GUTRIDE SAFIER LLP**

_____
Seth A. Safier, Esq.
Marie McCrary, Esq.
100 Pine Street, Suite 1250
San Francisco, CA 94111

Attorneys for Plaintiff

**<u>EXHIBIT A</u>**

I, Darren Millam, declare:

1.     I am the Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.     I submit this Declaration pursuant to California Code of Civil Procedure section 2015.5 and California Civil Code section 1780(d).

3.     I purchased a 20 count box of 13-gallon Great Value Recycling Drawstring Bags in Riverside County, California. My most recent date of purchase was approximately in or around October 2021.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this 18th day of February 2022, in Indio, California.



Darren Millam